IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
April 21, 2015 Session


**STATE OF TENNESSEE v. ERIC O. TURNER**


**Appeal from the Criminal Court for Sumner County**
**No. CR63-2013     Dee David Gay, Judge**

_____


**No. M2014-00597-CCA-R3-CD – Filed June 9, 2015**

_____


The defendant, Eric O. Turner, pled guilty to three counts of aggravated statutory rape, a Class D felony, and was sentenced as a persistent offender to nine years for each conviction, with one conviction to be served consecutively to the others for an effective sentence of eighteen years. After pleading guilty, the defendant was immediately released on probation. Within two weeks of the defendant's release, a warrant was issued for a violation of the probationary terms after it was discovered that the defendant had been staying with his girlfriend who had minor children who were not biologically related to the defendant. The trial court found that the defendant had violated the terms of his probation and consequently ordered him to serve the remainder of his sentence in prison. The defendant appeals the revocation of his probation, asserting that the trial court erred in its factual findings, that the defendant received insufficient notice of the basis for the revocation, that the trial court erred in not making written findings, and that the trial court erred in not considering sentencing alternatives. Having reviewed the record, we conclude that the trial court did not abuse its discretion, and we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, delivered the opinion of the Court, in which ALAN E. GLENN and ROGER A. PAGE, JJ., joined.

Lance A. Wray, Hendersonville, Tennessee (on appeal), and David Allen Doyle, District Public Defender, and Mike Anderson, Assistant District Public Defender (at trial), for the Appellant, Eric O. Turner

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Lawrence Ray Whitley, District Attorney General; and Jayson Criddle, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

The defendant entered his guilty pleas to three counts of aggravated statutory rape on April 4, 2013. At the plea hearing, the prosecutor stated that the factual basis for the plea was the thirty-eight-year-old defendant's three-month-long sexual relationship with a fourteen-year-old neighbor. The defendant was immediately released to supervised probation and credited with the time he had served in prison. One of the conditions of the defendant's probation was that he have no contact with any unrelated minor.

At the defendant's probation revocation hearing, his probation officer, Tammy Wright, testified that the defendant came to her office on the morning of April 5, 2013, having been released from prison the previous night. The defendant completed, initialed, and signed the Tennessee Bureau of Investigation sexual offender instructions form, which outlined certain restrictions, including that "no sexual offender . . . whose victim was a minor shall knowingly reside with a minor." The form notes exceptions in certain cases for the offender's own children or step-children. Ms. Wright testified that the defendant was legally blind and that she orally reviewed all the forms that he signed with him.

During the April 5th meeting, the defendant filled out a sexual offender "Registration / Verification / Tracking" form and a monthly reporting form. Ms. Wright testified that some of the defendant's information was in the computer from a prior offense and that she updated the tracking document with information that the defendant orally conveyed to her. The defendant listed two addresses: the address of his mother as a primary address and the address of his girlfriend, Amanda Dowlen, as a secondary address. Ms. Wright stated that she explained to the defendant that a residence where he spent five consecutive nights was a primary residence. Ms. Wright testified that the defendant informed her that there were children living at the secondary address that he had given. Because the defendant was not permitted to reside with minors who were not his biological children, Ms. Wright questioned the defendant, and the defendant assured her that Ms. Dowlen's children were his biological children. Ms. Wright testified, "I went over it more than once to be sure that he understood biological children because he had also stated he had some children in Kentucky."

2

The defendant signed a printout of the tracking form. The monthly reporting form, which was completed at the same time, had a notation handwritten at the bottom: "16 years – Girl," "6 years – Boy," and "Mother – Amanda Dowlen." Ms. Wright testified that she wrote these notes after the defendant informed her that children were living at his girlfriend's address. She acknowledged not writing on the monthly report that the children in the residence were biologically related to the defendant. Ms. Wright put a global positioning system (GPS) monitor on the defendant.

On April 10, 2013, the defendant returned to Ms. Wright's office, and he completed additional forms required by the sexual offender registry. The defendant also signed a general probation order stating that he would "obey the laws of the United States, or any State in which [he might] be, as well as any municipal ordinances." Ms. Wright testified that she reviewed the requirements of the registry with the defendant. Ms. Wright acknowledged not having put any address for the defendant in the space at the bottom of the probation order. However, she denied that the defendant had told her during this meeting he was having trouble with his address.

On April 11, 2013, Ms. Wright received a phone call from an administrator at the jail informing her that the defendant had been released and confirming that he was on the registry. Ms. Wright informed the caller that the defendant had been to her office, that his primary residence was with his mother, and that his secondary residence was with Ms. Dowlen and their biological children. As a result of the call, Ms. Wright contacted her supervisor, Laura Lisk, to inform her that the defendant might be residing with minors who were not biologically related to him.

After coordinating with law enforcement, Ms. Wright and Ms. Lisk conducted a home visit at Ms. Dowlen's home sometime before 10:00 a.m. on April 15, 2013. The defendant answered the door and woke Ms. Dowlen. Ms. Wright and Ms. Lisk testified that the home was a duplex which contained a kitchen/living area, one bedroom, and one bath. In the living area were a couch and a daybed or futon. Ms. Wright testified that the futon had bedclothes on it and was unmade as though someone had recently slept there but she could not tell if someone had slept on the couch. Ms. Lisk testified that the futon bed was unmade and looked as though it had been slept in; there were bed pillows on the couch. Ms. Lisk saw a stack of girls' or women's clothing by the couch and a stack of small boys' clothing by the futon. Neither Ms. Lisk nor Ms. Wright noticed any toys in the residence.

Ms. Wright and Ms. Lisk questioned Ms. Dowlen about the defendant's presence and his relationship to the children. Ms. Dowlen informed them that the defendant was not the children's biological father. At that point, the defendant interrupted to say he was their step-father. However, the defendant and Ms. Dowlen had never been married. Ms.

3

Dowlen was not aware of the disposition of the defendant's charges for aggravated statutory rape. When asked about the location of the children, Ms. Dowlen told the probation officers that the children were in school. Neither the defendant nor Ms. Dowlen ever told the probation officers that the children were not residing in the home at the time. Ms. Wright testified that the officers oversaw the defendant's departure. The defendant later called Ms. Wright twice, and in both calls, he disputed her claim that he had told her the children were his biologically. During the calls, he never stated that the children were not living at the home while he stayed there.

The day after the home visit, on April 16, 2013, Ms. Wright swore an affidavit alleging that the defendant violated his probation by "Violation of Rule #1: I will obey ..[.] Offender committed the offense of violation of sex offender registry by giving false information on the sex offender registry and by living in a residence where children reside that are not his biological children." Rule 1, referenced in the affidavit, reads "I will obey the laws of the United States, or any State in which I may be, as well as any municipal ordinances." On December 5, 2013, an amended probation violation affidavit was sworn, alleging that the defendant violated his probation by "Violation of Special Conditions: No contact with victim or her family or any unrelated minor ..[.] Offender was living with unrelated minors on 4/15/13."

The defendant's mother, Gloria Turner, gave testimony tending to show that the defendant had not been able to contact her about moving in upon his release. According to Ms. Turner, she had been working extraordinary hours in the week of the defendant's release. She testified that she worked twelve-hour shifts on one job and then frequently worked until 11:30 p.m. on a second job. She testified that she sometimes slept only three hours a night. Although she had a cell phone, she was not permitted to bring it to one job because of the camera, and she did not bring it to her other job because the machines interfered with its functioning. She did not believe she had a voicemail set up at the time. She also did not have time to check her text messages, and they sometimes got erased. The defendant did not have a key to her home. Ms. Turner testified that she did not get a voicemail or text from her son and that she did not see him until about a week after his release. The defendant had her home number but not her cell number. She also testified that she lived near a park and did not believe that the defendant would be able to reside with her. Ms. Turner also testified that Ms. Dowlen's children were not living with her at the address which the defendant had given as a secondary address. Ms. Turner visited the address during the relevant time period once. Ms. Turner knew Ms. Dowlen's son only by a nickname and had met Ms. Dowlen's daughters "a couple" of times.

Ms. Dowlen testified that the defendant was her boyfriend and that she was living at the address he listed as a secondary address for the sexual offender registry. According

to Ms. Dowlen, although the defendant stayed at her residence after his release, he never had contact with her children. Ms. Dowlen testified that she and the defendant both went to his mother's house, called his mother, left messages with friends, and left messages with her work, but they were not able to contact the defendant's mother. On April 4, 2013, the night the defendant was released, Ms. Dowlen and the defendant stayed at the "rec" house[1] while her seventeen-year-old daughter babysat her seven-year-old son in her home, and her adult daughter, who lived in the duplex next door, remained available to the children. The next day was Friday, and the children left to spend the weekend with their father. When they returned Monday afternoon, Ms. Dowlen made arrangements for them to spend the week with a family friend. They returned to their father's home again on Friday without having had any contact with the defendant. The probation officers came to the home on Monday morning, before the children had returned from the weekend visit.

Ms. Dowlen testified that she and the defendant had made plans for him to stay at the "farm house" and that they had arranged for the utilities to be turned on prior to the home visit from the probation officers. The defendant had planned to move out the day after the home visit, and his stay with Ms. Dowlen was just a temporary accommodation because he had nowhere else to go.

Ms. Dowlen acknowledged that the children resided in her home. She and her daughter slept in the bedroom, and her son slept on the futon. She testified that the children kept toys and clothes there. She stated that the "kids were actually not living with me full-time at that time either" and that her daughter, who was pregnant, "moved back in, but she wasn't living there full-time." She reiterated that the children had no contact with the defendant and testified that she would not risk losing her children to be with her boyfriend.

She acknowledged that the children were not the defendant's biological children and that she and the defendant were not married. Regarding her testimony at the preliminary hearing preceding the defendant's guilty pleas, Ms. Dowlen testified that she did not recall differences between her testimony and her statement to police, and she explained that she had been confused as to the time period to which the prosecution's questions had referred. Ms. Dowlen did not recall being asked by the probation officers if the children were present at the same time as the defendant. She at first testified that she did not know if she had informed the probation officers that the children and defendant were never present in the home at the same time. She then testified, however,

---

[1] Ms. Dowlen referred to both a "rec" house and "farm house," but the record does not further clarify the nature of these premises.

that she did tell the officers that the children had never been present in the home when the defendant was there.

Ms. Lisk and Ms. Wright testified in rebuttal that Ms. Dowlen had never said that the children were not present in her home while the defendant was staying with her, and Ms. Lisk testified that Ms. Dowlen had acknowledged that the children resided there. The prosecution introduced the records of the defendant's GPS monitor. The monitor showed that the defendant was never within one hundred and fifty meters of his mother's home from the dates of April 5, 2013 to April 11, 2013, and that the defendant spent almost all of his time after his release at Ms. Dowlen's address. The prosecution also introduced school records for Ms. Dowlen's son showing that Ms. Dowlen's address was listed as his home address.

At the hearing, the trial court noted that despite his ten prior felonies, the defendant was sentenced as a persistent, and not a career, offender. The trial court explicitly found that the defendant's probation officer was credible and that Ms. Dowlen was not credible. The trial court found that the defendant had told his probation officer that he would be living with his biological children, that he later told his probation officer that they were his step-children, and that neither statement was true. The trial court further found that the defendant had admitted that the children lived there by telling his probation officer that he would have a secondary residence in a home where his biological children would also reside. The judge pointed to evidence that the defendant and Ms. Dowlen were not the only people staying at the house. The trial court revoked the defendant's probation and ordered him to serve the remainder of his sentence in the penitentiary.

## ANALYSIS

### I. Standard of Review

An appellate court will not overturn the trial court's decision regarding revocation absent an abuse of discretion. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). Generally, a trial court abuses its discretion when it "applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010). The reviewing court should not overturn a trial court's decision regarding revocation unless it concludes "that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the

6

conditions of probation has occurred." [2] *Harkins*, 811 S.W.2d at 82. On review, the trial judge's factual findings in a probation revocation proceeding carry the weight of a jury verdict. *State v. Beard*, 189 S.W.3d 730, 735 (Tenn. Crim. App. 2005).

## II. Sufficiency of the Evidence Supporting Revocation

In challenging the trial court's decision on revocation, the defendant asserts that there was no evidence that he was living with unrelated minors, essentially asking this court to reevaluate the factual findings of the trial court. Tennessee Code Annotated sections 40-35-310(a) and -311(e)(1) (2010) provide that the trial court may revoke a suspended sentence and reinstate the original sentence if the preponderance of the evidence supports the finding that the defendant has violated the terms of probation. As noted above, the revocation of probation lies with the sound discretion of the trial court. *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *Harkins*, 811 S.W.2d at 82. Proof of the violation need not be beyond a reasonable doubt, but the proof must allow the trial judge to "make a conscientious and intelligent judgment" regarding whether the defendant's actions violated the terms of his probation. *Harkins*, 811 S.W.2d at 82.

The trial court determined that the defendant had violated the laws of the State by giving false information on the sexual offender registry and by residing with unrelated minors. The trial court also determined that the defendant had violated the terms of his probation, which required no contact with unrelated minors, by residing with unrelated minors.

Tennessee Code Annotated section 40-39-211(c) mandates that no sexual offender whose victim was a minor may "knowingly reside with a minor," except in certain cases where the offender is the parent. A primary residence is defined as "a place where the person abides, lodges, resides or establishes any other living accommodations in this state for five (5) consecutive days," and a secondary residence is a place, other than the primary residence, where the person establishes living accommodations for fourteen days or more in the aggregate during any year. T.C.A. § 40-39-202(12), (18). Falsification of a Tennessee Bureau of Investigation registration form is a violation of the laws surrounding the sexual offender registry. T.C.A. § 40-39-208(a)(2). The defendant signed a form giving his primary address as his mother's address and his secondary address as his girlfriend's, and he did not attempt to change this information prior to the

---

[2] This court has called into question the continued applicability of the "no substantial evidence language," noting the fact that, since the decision in *Harkins*, the Sentencing Act has been amended to specify the burden of proof as by a preponderance of the evidence. *See*, *e.g.*, *State v. Farrar*, 355 S.W.3d 582 (Tenn. Crim. App. 2011) (applying the standard but questioning its continued relevance).

7

home visit. The terms of the defendant's probation specified that he was to have no contact with any unrelated minor.

At the hearing, Ms. Wright testified that the defendant told her that his primary residence would be with his mother and that his secondary residence would be with his girlfriend and his biological children. However, according to GPS records, from the time that the defendant met with Ms. Wright to fill out forms on April 5, 2013 up through April 11, 2013,[3] the defendant never went near his mother's residence but instead spent the majority of his time at Ms. Dowlen's residence. Ms. Turner testified that she did not speak with the defendant about his living arrangements until a week after his release and that she believed that her proximity to a park would prevent the defendant from residing with her. The school records of one of Ms. Dowlen's minor children showed that the child resided at the same address where the defendant was staying. A home visit showed that there were two makeshift beds, a couch and a futon, in the living room. The futon had a pile of boys' clothes next to it, and the couch had bed pillows and a pile of girls' clothes. The futon was covered in bedclothes, was not made, and appeared to have been recently slept in. Although Ms. Dowlen testified at the hearing that the defendant was never in contact with the children and that the children were not in the house for any of the approximately ten days the defendant spent there, she did not testify that the children resided elsewhere. The trial court viewed the defendant's representation to Ms. Wright that he would live with his biological children at Ms. Dowlen's address as an admission that the children resided there. Ms. Lisk testified that Ms. Dowlen also acknowledged that the children lived there. Both probation officers testified that neither Ms. Dowlen nor the defendant claimed at the time of the home visit that the children were residing elsewhere or that the defendant had not had contact with them; instead, the defendant claimed that they were his step-children. Ultimately, the trial court did not credit Ms. Dowlen's testimony and credited the testimony of Ms. Wright.

The trial court found by a preponderance of the evidence[4] that the defendant had violated the terms of his probation and the laws of the sexual offender registry by knowingly residing in a house where children who were not biologically his children also resided.[5] "In probation revocation hearings, the credibility of the witnesses is for the

---

[3] No records were introduced regarding the defendants whereabouts past this date.

[4] The defendant seeks to challenge the burden of proof by claiming that the State should be required to prove new crimes beyond a reasonable doubt. However, the defendant here was not incarcerated for new crimes but for the crimes to which he pled guilty, and the burden of proof is statutorily specified. *See* T.C.A. § 40-35-311(e)(1).

[5] The trial court also found that the defendant violated the terms of the sexual offender registry by being dishonest about his relationship with the children. However, this information was not contained in any forms the defendant submitted to his probation officer, and neither the trial court nor the State specify

determination of the trial judge, who is in the best position to observe witness demeanor." *State v. Beard*, 189 S.W.3d 730, 735 (Tenn. Crim. App. 2005). The record contains evidence that the defendant resided in a home with unrelated minors. Accordingly, the trial court did not abuse its discretion in finding that the defendant violated the terms of his probation and the laws of the sexual offender registry.

### III. Notice of Violations

In addition to his assertions that the trial court erred in the factual basis for its findings, the defendant alleges that he was given insufficient notice of the basis of the probation violation and that his due process rights were thereby violated. Because the guilt of a probationer has already been decided, "'the full panoply of rights due a defendant'" does not apply to a revocation hearing. *State v. Wade*, 863 S.W.2d 406, 408 (Tenn. 1993) (quoting *Black v. Romano*, 471 U.S. 606, 613 (1985)). However, because a probationer's freedom from incarceration is at stake, certain due process rights do apply. *Wade*, 863 S.W.2d at 408. Part of the defendant's due process right is the right to "'written notice of the claimed violations of [probation or] parole.'" *Id.* (quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973) (alteration in original)).

Here, the defendant was provided with two written violation affidavits. One specified that he failed to follow the laws of the State "by giving false information on the sex offender registry and by living in a residence where children reside that are not his biological children." The other alleged that he violated the terms of his probation specifying no contact with unrelated minors by residing in a home with unrelated minors. The proof introduced at the hearing pertained to the allegations in the affidavits. The fact that the defendant broke the terms of his probation and, in addition, violated more than one statutory provision by residing at his secondary address with unrelated minors does not create "ambiguity" in the notice. Neither does the fact that the trial court ultimately did not make a factual finding regarding the allegations that the defendant falsified his registry information by giving an incorrect primary address.[6] We note that the defendant never raised an issue regarding the sufficiency of the notice before the trial court, *see*

---

the statutory provision he violated. The trial court made no factual finding that the defendant falsified his registration form by giving an incorrect primary address. Accordingly, we base our conclusion that the trial court did not abuse its discretion on the trial court's finding that the defendant resided with unrelated minors.

[6] The defendant, in his brief, asserts that contemporaneously with the probation violation warrant, he was charged with falsifying the registry information by giving an incorrect primary address and with violating the statutory provision regarding residing with unrelated minors. *See* T.C.A. § 40-39-211(c); T.C.A. § 40-39-208(a)(2). It appears that the defendant was thus aware of the alleged statutory violations which were the basis for the probation violation.

9

Tenn. R. App. P. 36(a), and we conclude that the defendant's due process rights were not violated through insufficient notice.

## IV. Written Findings

The defendant next challenges the trial court's order revoking his probation, alleging that the trial court failed to make required written findings and thereby violated his right to due process. Part of a probationer's due process right includes "'a written statement by the factfinders as to the evidence relied on and reasons for revoking (probation or) parole.'" *Gagnon*, 411 U.S. at 786 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)). Where the trial court has made oral findings regarding the revocation and the basis for the decision on the record, a transcript of a hearing satisfies the "written statement" requirement of due process. *State v. Leiderman*, 86 S.W.3d 584, 591 (Tenn. Crim. App. 2002).

In *Leiderman*, this court concluded that even a written order which does not incorporate the trial court's oral findings is sufficient for the purposes of due process and that to conclude otherwise would be to "elevate form over substance." *Id.* Accordingly, we have held in the past that a transcript is adequate when it demonstrates that the trial court "'provided adequate findings at the conclusion of the probation revocation hearing showing both the grounds for the revocation and the reasons for the court's findings.'" *State v. Quincy Mills*, No. E2010-00519-CCA-R3-CD, 2011 WL 3568377, at *2 (Tenn. Crim. App. Aug. 15, 2011) (quoting *Leiderman*, 86 S.W.3d at 591).

The trial court's written order did not include a summary of the evidence relied on and reasons for revoking probation, but it did reference the hearing testimony. While the order did not specifically incorporate the trial court's oral findings, the primary requirement is that "'the record includes the evidence relied upon and the reasons for the revocation.'" *Leiderman*, 86 S.W.3d at 590 (quoting Mihal Nahari, Note, *Due Process and Probation Revocation: The Written Statement Requirement*, 56 Fordham L.Rev. 759, 772 (1988)). At the hearing, the trial court found that the evidence showed that unrelated minors were residents of the home at the same time that the defendant was a resident of the home. We conclude that these findings within the hearing transcript satisfy the due process requirement of a written finding. The defendant is not entitled to relief.

## V. Sentencing

Finally, the defendant asserts that the trial court erred in not giving him an alternative sentence or granting another probationary period after he had violated his probation. When a trial court finds by a preponderance of the evidence that the defendant has violated the conditions of probation, the trial court may revoke the probation and

order the defendant to serve the judgment as originally entered. T.C.A. § 40-35-311(e)(1)(A). In addition to reinstating the sentence, the trial court may choose to start the probationary period anew or to extend the probation for up to two additional years. T.C.A. § 40-35-308; *State v. Hunter*, 1 S.W.3d 643, 647-48 (Tenn. 1999). The trial court may also impose a community-based alternative sentence "provided, that the violation of probation and suspension is a technical one and does not involve the commission of a new offense." T.C.A. § 40-35-311(e)(1)(B). "The determination of the proper consequence of the probation violation embodies a separate exercise of discretion." *State v. Patsy Lynn McCoy*, No. M2011-00006-CCA-R3-CD, 2011 WL 6916227, at *3 (Tenn. Crim. App. Dec. 28, 2011) (citing *Hunter*, 1 S.W.3d at 647).

The trial court found that the defendant violated the terms of his probation by having contact with an unrelated minor and that he violated the mandates of the sexual offender registry by residing with unrelated minors and giving false information regarding the children at his residence. The defendant was subsequently charged with two violations of the sexual offender registry. Because the violations involved the commission of new offenses, the defendant was not eligible for a community-based alternative sentence. *See State v. Ricky Lee Burris*, No. E2012-00325-CCA-R3-CD, 2012 WL 3629016, at *3 (Tenn. Crim. App. Aug. 23, 2012) (holding that the defendant's violation of probation, which involved a conviction for violating the terms of the sexual offender registry by failing to notify the registry of his change of address, meant that "community corrections was not available to him"); *compare State v. Roy L. McAlister*, No. M2013-00581-CCA-R3-CD, 2013 WL 5969603, at *7 (Tenn. Crim. App. Nov. 7, 2013) *perm. app. denied* (Tenn. Mar. 3, 2014) (concluding that the trial court was permitted to impose an alternative sentence when the defendant violated probation by residing within one thousand feet of a school but that "nothing in the statute *required* it").

"This court has repeatedly cautioned that 'an accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing.'" *State v. Juan Manuel Coronado, II*, No. E2010-01058-CCA-R3-CD, 2011 WL 704543, at *3 (Tenn. Crim. App. Mar. 1, 2011) (quoting *State v. Jeffrey A. Warfield*, No. 01 C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. Feb. 10, 1999)). There is no requirement that the trial court consider other sentencing options when revoking a defendant's probation. *State v. George Vincent Ware*, No. E2010-00141-CCA-R3-CD, 2010 WL 3448057, at *3 (Tenn. Crim. App. Sept. 1, 2010). After finding that the defendant had violated the terms of his probation, the trial court did not abuse its discretion by ordering the defendant to serve his original sentence.

## CONCLUSION

Based on the foregoing reasoning, we conclude that the trial court did not abuse its discretion in revoking the defendant's probation and reinstating his sentence, and we affirm the judgments of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE